EAGLE *v.* NEW YORK LIFE INSURANCE COMPANY.

[No. 7,032.    Filed May 13, 1910.    Rehearing denied December 30, 1910.    Transfer denied June 29, 1911.]

1. INSURANCE.—*Loans on Policy.*—*Forfeitures.*—In an insurance policy upon which the assured and his beneficiary had borrowed money from the company, pledging the policy as a security therefor, a provision that "if any premium on said policy or any interest on said loan is not paid on the date when due, * * * such pledge shall, without demand or notice of any kind, * * * be foreclosed by said company, by deducting the amount due on said loan from the reserve on said policy," is not invalid on the ground that the legal requirements for a foreclosure are not granted thereby.    p. 293.

2. INSURANCE.—*Lex Loci Contractus.*—*Loans.*—*Place of.*—*Husband and Wife.*—*Suretyship.*—An insurance policy issued by a New York company, and providing that the "contract contained in such policy and * * * application shall be construed according to the law of the State of New York, the place of said contract being agreed to be the home office of the company," and providing further that "the amount loaned [on the policy] at any time shall be such as the insured may desire," and that the "policy shall be duly assigned to the company as collateral security for the loan," and a loan agreement executed by the insured and his wife who was the beneficiary in the policy, providing that such agreement was "made under and pursuant to the laws of the State of New York, the place of said contract being said home office of said company," are governed by the laws of New York, and the wife's rights as beneficiary, are subject to the rights and actions of the assured under the provisions of the policy.    pp. 295, 297.

3. INSURANCE.—*Married Women.*—*Rights of.*—*New York Statute.*—The New York statute providing that "a married woman may, in her own name, cause the life of her husband to be insured for a definite time," and that when she survives such time she is entitled to receive the insurance money as her separate property "free from any claim of a creditor * * * of her husband," and that "a policy of insurance on the life of any person for the benefit of a married woman is also assignable * * * and may be surrendered * * * by her * * * with the written consent of the assured," applies to insurance taken by a wife upon the life of her husband, and not to a policy taken by the husband in which the wife is named as beneficiary; and the wife

is authorized to assign, with her husband's written consent, a policy so taken by her. p. 296.

4. INSURANCE.—*Beneficiary.—Right to Change.—Effect.*—The beneficiary of an insurance policy does not have a vested right therein, where the assured is authorized to change beneficiaries. p. 296.

5. INSURANCE.—*Options.—Right to Exercise.*—The husband has the right to exercise the options provided in an insurance policy taken out by him, where his wife is named as beneficiary, and where he has the reserved right of changing beneficiaries at any time. p. 296.

6. INSURANCE. — *Contracts.—Suretyship.—Married Women.—Statutes.*—The Indiana statute (§7855 Burns 1908, §5119 R. S. 1881) declaring void all contracts of suretyship executed by married women, does not apply to a loan obtained by a husband and his wife on an insurance policy, where the provisions for the loan in question were contained in the policy in which such wife's rights were acquired. p. 297.

7. INSURANCE. — *Loans. — Forfeiture. — Waiver.— Prejudice.*— An agreement by an insurance company to be lenient with a borrower and not to enforce a forfeiture, the written contract for the loan providing for a forfeiture, though probably unenforceable, must be shown to have been violated to the beneficiary's prejudice, before the beneficiary can found a claim thereon. p. 298.

8. INSURANCE.—*Extended.—Conditions Precedent.—Failure to Perform.*—An action for extended insurance cannot be maintained, where the policy provided that the payment of any loan to the assured should be a condition precedent to the automatic extension of such insurance and where the assured had failed to pay his loan. p. 299.

From Marion Circuit Court (15,919); *Henry Clay Allen,* Judge.

Action by Mary W. Eagle against the New York Life Insurance Company. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*John H. Kingsbury* and *Joseph Collier,* for appellant.

*James H. McIntosh, Gavin, Gavin & Davis* and *Arthur P. Will,* for appellee.

COMSTOCK, J.—This action was based on a contract of insurance executed by appellee on the life of Charles D. Eagle, husband of appellant. The policy was for $1,500, and appellant was designated as beneficiary therein.

The complaint alleges that on July 13, 1897, defendant executed its contract of insurance, whereby, in consideration of an application made therefor and payment of premiums thereon, it promised to pay to plaintiff the sum of $1,500, on proof of the death of Charles D. Eagle. Defendant further promised that in the event premiums were paid thereon for a period of nine years, and thereafter further payments of premiums were defaulted, and said Charles D. Eagle should die within a period of seven years and eleven months from the time of such default, it would pay to the beneficiary the sum of $1,500. Copies of the contract of insurance, and of the application made therefor, are filed with the complaint.

Plaintiff further avers that the premiums were paid in advance on said contract of insurance in accordance with the stipulations therein, for a period of nine years from date of execution thereof to and including the year ending July 13, 1906; that the semiannual premium due and payable on July 13, 1906, was not paid on said day, nor was it paid within the thirty days' grace allowed by said policy; that on January 27, 1907, within said period of seven years and eleven months, said Charles D. Eagle died; that plaintiff has made full proof of insured's death, in the manner provided in said contract; that she and the insured performed all the stipulations in said contract on their part to be performed; that defendant, in violation of the terms of said contract, refused to pay said sum of $1,500, and denied liability under said contract.

The main body of the policy reads: .

"NEW YORK LIFE INSURANCE COMPANY

By this policy of insurance, agrees to pay $1,500 to Mary W., wife of the insured, or, in the event of her prior death, to the insured's executors, administrators and assigns, or to such other beneficiary as may be designated by the insured, as hereinafter provided, at the home office of the company, in the city of New York,

immediately upon receipt and approval of proofs of the death of Charles D. Eagle, of Indianapolis, Marion county, Indiana. * * * And the company further agrees that this policy shall be incontestable after it has been in force one full year, if the premiums have been duly paid. This contract is made in consideration of the written application of the insured, which is a part of this contract, and in further consideration of the sum of $15.96, to be paid in advance, and of the payment of a like sum on January 13 and July 13 in every year thereafter during the continuance of this policy. The special advantages, benefits and provisions, printed or written by the company on the following pages, are conditions precedent, and are a part of this contract, as fully as if they were recited at length over the signature hereto affixed."

Under the title of "Special Advantages," certain loan and surrender values, and provisions for extensions, are shown, as follows: Loan value at the end of the eighth year, $99, at the end of the ninth year, $117; the surrender value in paid-up insurance at the end of the ninth year, $277, and the "extended insurance for $1,500 for a term of seven years and eleven months for the ninth year." For the purposes of this opinion it is needless to set out the table for other advantages, or the accumulation of guaranties, because they are not applicable to this policy.

Under the title "Benefits and Provisions," said policy contains the following:

"Second. The amount loaned at any time shall be such as the insured may desire, not to exceed the sums shown in the table on the preceding page. The amount of any loan shall include any previous loan then unpaid. Third. That this policy shall be duly assigned to the company as collateral security for the loan, and deposited at the home office. A duplicate of the loan agreement, which is also a receipt for the policy, will be furnished to the insured."

The application is set out, and it shows that the "name of the person applying for insurance is Charles D. Eagle." In this application it is agreed, on behalf of himself, "or

any person who shall have or claim any interest in any policy issued under this application," as follows:

> "Sixth. That the policy applied for shall be in the form now in use by the company, and that the contract contained in such policy and this application shall be construed according to the law of the State of New York, the place of said contract being agreed to be the home office of the company."

There was an offer to confess judgment for $52, and costs accrued and accruing, including those on final judgment.

Appellee answered in two paragraphs. The first was a general denial. The second was a special and partial answer to all except $49 of the principal, and the interest thereon from the time of the death of the insured. It admits the execution of the policy sued on, and avers that appellee is a corporation organized under the laws of the State of New York, with its general offices in the city of New York, in said state, and that it is a resident and citizen of said state; that said policy was executed in the city of New York; that one of its provisions was that

> "the company will make advances to the insured, as such, under this policy within the month of grace allowed for payment of premiums, on application to the home office at the third or any subsequent anniversary of the insurance within the accumulation period under the terms of the company's loan agreement then in use, upon the conditions in said policy set forth;"

that insured paid the premiums up to and including the one maturing on January 13, 1906; that the premium maturing July 13, 1906, was wholly unpaid; that while the policy was in force, on July 20, 1905, appellee, pursuant to its terms, and at the request of said Charles D. Eagle and appellant, advanced to them $99 in cash, as a loan upon said policy, and in consideration thereof they executed to appellee the following:

Whereas, the undersigned have this day duly received from the New York Life Insurance Company $99 in cash, as a loan on policy No. 803,039, issued by said company on the life of Charles D. Eagle, therefore, in consideration of the premises, the undersigned hereby agree as follows: (1) To pay said company interest on said loan at the rate of five per cent per annum, payable in advance from this date to the next anniversary of said policy, and annually in advance on said anniversary and thereafter. (2) To pledge, and do hereby pledge, said policy as collateral security for the payment of said loan and interest, and herewith deposit said policy with said company at its home office. (3) To pay said company said sum when due, with interest, reserving, however, the right to reclaim said policy by repayment of said loan with interest at any time before due, said repayment to cancel this agreement without further action. (4) That said loan shall become due and payable, (a) either if any premium on said policy or any interest on said loan is not paid on the date when due, in which event said pledge shall, without demand or notice of any kind, every demand and notice being hereby waived, be foreclosed by said company, by deducting the amount due on said loan from the reserve on said policy, computed according to the American Experience Table of Mortality, and interest at the rate of four and one-half per cent per annum; and if after said deduction there is any balance of said reserve as so computed, said balance shall be taken as a single premium of life insurance at the published rates of said company at the time said policy was issued, and shall be applied to purchase upon the life of the insured under said policy, at the age of said insured on said due date, paid-up insurance for such amount as said balance will buy payable under the same conditions as the original policy, but without premium return, participation in profits, or further payment of premium. (b) Or (1) on the maturity of the policy as a death claim or an endowment; (2) on the surrender of the policy for a cash value; (3) on the completion of any tontine or accumulation dividend period. In any such event the amount due on said loan shall be deducted from the sum to be paid or allowed under said policy. (5) That the application for said loan was made to said company at

its home office in the city of New York, was accepted, the money paid by it, and this agreement made and delivered there; that said principal and interest are payable at said home office, and that this contract is made under and pursuant to the laws of the State of New York, the place of said contract being said home office of said company. In witness whereof said parties have hereunto set their hands and affixed their seals this 20th day of July, 1905.

Charles D. Eagle (L. S.)
Mary W. Eagle (L. S.)

Signed and sealed in presence of Mary C. McComb. Foreclosed and paid by deducting the amount of the debt from the value of the policy.

John C. McCall, Secretary.

Forwarded from Indianapolis branch office, 7-21-1905.

T. J. Logan, Cashier.

Premium paid in full.
to 7-13-5
B. N. $————.''

Said answer further avers that no part of the loan has been repaid except by application of the policy as was thereinafter shown. It avers that as collateral security for the repayment of the loan, said Charles D. Eagle and appellant pledged, transferred and assigned said policy to appellee; that on December 31, 1906, the premium maturing July 31, 1906, was unpaid, and the loan and interest were due and unpaid; that thereupon, in accordance with the terms of such loan agreement, defendant foreclosed said pledge of said policy, by deducting the amount due on said loan, without interest, which was the sum of $99, from the reserve of said policy, computed according to the American Experience Table of Mortality, and interest at the rate of four and one-half per cent per annum, which was the sum of $119.67; that this left a balance of $20.67 of the reserve, not required for the repayment of the loan, and this balance the company applied, as a single premium, to the purchase of paid-up insurance at the published rates of said company at the time said policy was issued upon the life of said insured in said policy at the age of said insured on

said due date, said paid-up insurance being payable under the same condition as the original policy, but without premium return, participation in the profits or further payment of premiums, the amount of said paid-up insurance thus purchased being $49; that upon receipt of the notice of death, appellee offered to pay appellant said sum of $49, and is still ready and willing so to do.

A demurrer was filed to said second paragraph of answer, and overruled, and appellant replied in four paragraphs. The first was a general denial, which was subsequently withdrawn. The second alleged, in substance, that the policy of insurance was executed in the State of New York, and, by a statute of that state, became the absolute property of the wife. A copy of the statute is filed, with averments that the statute was duly enacted, and is in full force and effect; that said wife caused her husband to apply for the policy, and paid from her own funds the premiums thereon; that at the time said policy and loan agreements were executed, she was a married woman, the wife of said Charles D. Eagle; that the funds procured on said loan agreement were for the benefit of and were used by her husband for his own use, and that no part of the funds were used by her or for her benefit, but she was surety for her husband, and these facts appellee knew; that at the time said loan agreement was executed, appellant was, and for years prior thereto had been, a *bona fide* resident of Indiana, and the loan agreement was signed by her in said State, and it was by her husband delivered to appellee at Indianapolis, in said State, and the funds were paid by appellee to appellant's husband at said point; that the recitals in said loan agreement, to the effect that said agreement was signed and delivered in the State of New York, and the money paid thereon at said point, are all false, and were inserted by appellee for the fraudulent purpose of defeating the statute of suretyship of Indiana, and that said loan agreement was void because of suretyship of appellant; that the statute

of New York, so far as material to this case, reads as follows: "A married woman may, in her own name, cause the life of her husband to be insured for a definite period, or for term of his life. When a married woman survives such period, or term, she is entitled to receive the insurance money, payable by the terms of the policy, as her separate property, and free from any claim of a creditor or representative of her husband. * * * A policy of insurance on the life of any person for the benefit of a married woman is also assignable, and may be surrendered to the company issuing the same, by her, or her legal representative, with the written consent of the assured."

The third paragraph alleges that at and before the time the loan became due, appellant and her husband were in financial embarrassment, and did not have funds with which to pay said loan; that they applied to appellee for additional time in which to make said payment; that appellee informed them that it would not insist on a strict performance of the loan agreement, that it would not insist on strict, prompt and punctual payments of premiums and interest, and that it would be lenient with and allow appellant and her husband a reasonable time in which to make said payments; that appellant and her husband relied on said representations of appellee, and by reason of said conduct on its part they were led to believe that appellee did not intend to insist on prompt and punctual payment; that for that reason they did not negotiate a loan elsewhere, or attempt to raise funds with which to pay said debt; that they acted on the belief that appellee would not withdraw said leniency, and would not declare a forfeiture, except on demand for payment and notice of withdrawal of said grace; that appellee thereafter, in violation of the extension, and without demand for payment, or notice to appellant or her husband of its withdrawal of extension, or its intention to forfeit and foreclose the pledge, did forfeit and foreclose the pledge; that

no notice of said foreclosure was given to appellant by appellee until request was made for payment of the policy.

The fourth paragraph is based on a statute of New York, but, for reasons stated in the brief, appellant raises no question thereon.

A demurrer to each paragraph of reply, for want of facts, was sustained, and, appellant refusing to plead further, the court rendered judgment that appellant take nothing by this action, and that she be forever estopped from asserting any further right or claim under said policy.

We adopt the concise statement in the able brief of appellant, which is as follows: "In this appeal the three principal propositions of law arise on the sufficiency of appellee's answer, and on the sufficiency of the second and third paragraphs of appellant's reply." These questions will be considered in the order named.

It is the claim of appellant that the answer, being based on an alleged foreclosure, under the pledge agreement and in conformity to the stipulations therein, is bad because the requirements of a foreclosure under the law are not shown. It is argued that the process of foreclosure stipulated for in the pledge agreement is repugnant to public policy, because, in effect and result, it destroys the equity of redemption. The validity of the loan agreement is assailed by appellant, because it denies a reasonable time after default in which to exercise redemption, makes the default and power to foreclose simultaneous events, and provides for a summary process of foreclosure susceptible of instant consummation.

So much of the loan agreement as is relevant to this question reads thus:

"(4) That said loan shall become due and payable (a) either if any premium on said policy, or any interest on said loan is not paid on the date when due, in which event said pledge shall, without demand or notice of any kind, every demand and notice being hereby

waived, be foreclosed by said company, by deducting the amount due on said loan from the reserve on said policy.''

It is pointed out that the failure to pay either the premium on the policy or the interest on the loan on the date when due constitutes a default, and grants to the creditor the power to foreclose the pledge; that the mode of foreclosure selected is the summary process of "deducting the amount due on said loan from the reserve on said policy." It is argued that it is quite apparent that a reasonable time could not intervene after the default and before foreclosure in which to exercise redemption. Appellant cites various authorities to sustain the proposition that where a contract, mortgage or pledge attempts to provide that upon default the right of redemption shall cease, and the property shall become the absolute property of the pledgee, such a provision is ineffective. In the contract before us, however, there is the express provision, in case of default, for ascertaining the value of the policy, pledged or assigned according to a rule therein set forth; a provision for the application of this value to the payment of the debts, so far as may be required, and a provision as to the disposition of the remainder. These provisions have been followed. The federal court in the case of *In re Mertens* (1906), 144 Fed. 818, 75 C. C. A. 548, considers the adjudicated cases where there was authority, upon default in the payment of any part of the indebtedness, to sell collateral at public or private sale, with or without notice, with the right on the part of the pledgee to purchase it, and says: "If this was such a sale as was authorized by the terms of the pledge, we do not doubt that the bank, in making it, was within its rights, and that no rule of the common law or doctrine of equitable jurisprudence, and none of the provisions of the bankruptcy act, can be invoked to defeat or invalidate it."

The loan agreement in question provides for giving the insured the benefit of the full value of the policy ascertained

by a fixed standard. The policy-holder had time in which to pay the premium or to repay the loan, and the claim, that the beneficiary could borrow and keep the money which constituted the reserve, and then be entitled to the benefit of the additional insurance, which the reserve would have purchased had the money not been borrowed, cannot be allowed.

In support of the second paragraph of reply, it is argued that the statute entered into and became a part of the contract and the provisions therein, and that the loan 2. was conditioned upon the valid consent of appellant; that the loan agreement entered into, being one of suretyship, was void, and was not one of valid consent of appellant; that under the statute and decisions of the State of New York, appellant held an absolute and vested interest in the policy from the moment it was issued, and it required some valid act on her part to destroy that interest. Appellant contends that the parties did not intend by the agreement to contravene the statute; that they contracted with due regard to the statute, and that the statute entered into and became a part of the contract itself; that, reading the statute into the policy, the loan was to be made only when a valid consent of the wife thereto was procured.

It is argued that as the reply shows that appellant was a resident of Indiana, that the loan agreement was executed in this State, and that the money was paid to her husband here, the attempt to make it a contract of New York is ineffectual; that the contract, being in violation of an express statute of this State, is void, and there was no valid consent on the part of the wife to the loan. §7855 Burns 1908, §5119 R. S. 1881.

The policy and the loan agreement are New York contracts, and are governed by the laws of the State of New York, and are not governed by the Indiana statute. The policy conferred certain rights on appellant as beneficiary,

but she took the rights thus conferred on her, subject to the limitations and provisions in the policy contained. The statute expressly authorizes the wife to assign the policy, with the written consent of the husband. The policy required the company to make said loan to the insured upon his demand. The policy is not such as the New York statute contemplated. The statute contemplates a contract made by the insurance company directly with the wife, either in person or through an agent, as the case may be. When thus taken, it was the property of the wife and her children, and theirs alone. In this case, the insurance was payable to the wife should she survive the husband, otherwise, to his representatives. The "insured," specifically on the face of the policy stated to be Charles D. Eagle, "herein called the insured," was expressly authorized to change the beneficiary at any time. Because of the last-named provision, the beneficiary did not have a vested right in the policy. *Equitable Life Assur. Soc., etc.,* v. *Stough* (1910), 45 Ind. App. 411, and cases cited. If the policy should reach the accumulation period—July 13, 1917—the insured, Charles D. Eagle, and not the appellant, would get the various options, and would be entitled to receive all the money due. In the case of *Eadie* v. *Slimmon* (1862), 26 N. Y. 9, 82 Am. Dec. 395, cited by appellant, the court makes clear the character of the contract contemplated by the statute of that state. It also makes clear the distinction between a contract with the wife and a contract with the husband for her benefit. In the case of *Whitehead* v. *New York Life Ins. Co.* (1886), 102 N. Y. 143, 6 N. E. 267, 55 Am. St. 787, which is cited in the case of *Shipman* v. *Protected Home Circle* (1903), 174 N. Y. 398, 67 N. E. 83, 63 L. R. A. 347, and is relied on by appellant, Judge Finch, speaking for the court, said: "All three of the life insurance policies sought to be revived and enforced in this action purport on their face to be contracts with the wife as the party assured, and

not at all with the husband, who stands in the policies as simply the life insured, his conduct and death furnishing the contingencies upon which the liabilities of the insurer are made to depend. As the relation was tersely described on the argument, the contract is about the husband but not with him.''

The authorities cited by appellant do not uphold the proposition that the loan agreement is to be treated as an Indiana contract governed by the Indiana statute as to married women's contracts. In the case of *Garrigue* v. *Kellar* (1905), 164 Ind. 676, 69 L. R. A. 870, 108 Am. St. 324, the rule is thus declared: ''A contract must be construed and its validity determined under the laws of the state where it is executed, unless it can be fairly said that the parties at the time of the execution clearly manifested an intention that it should be governed by the laws of another state.''

In the case of *Burns* v. *Burns* (1907), 190 N. Y. 211, 82 N. E. 1107, the parties lived in different states, and the contract (an insurance policy) provided that it should be governed by the laws of Ohio, the state where the company's home office was located. The court held that the insured ''had the right, notwithstanding his being a nonresident of Ohio, to agree that the contract of insurance should be governed and construed by, and according to, the laws of that state only,'' and that such agreement would be carried out.

This court has held that where the provisions for the loan are contained in the very instrument through which the married woman acquires her rights, the statutory inhibition against suretyship contracts cannot be invoked, because she takes her rights in the insurance, subject, also, to the obligations and right of the company to make the loan and to be protected thereon by the assignment of the policy. *Union Cent. Life Ins. Co.* v. *Woods* (1894), 11 Ind. App. 335, 339.

Similar statutes of other states have been construed in

cases where the same objection has been raised, and it has been expressly decided that, notwithstanding the statute, a wife who is named as beneficiary in a policy of insurance on her husband's life has capacity to join him in an assignment of it, and is bound by her act. *Herr* v. *Reinoehl* (1904), 209 Pa. St. 483, 58 Atl. 862.

The provision of the policy before us is that "the company will make advances to the insured as loans on this policy," setting out the conditions, among which is the following: "This policy shall be duly assigned to the company as collateral security for the loan."

In the case of *Union Cent. Life Ins. Co.* v. *Woods, supra,* the court said: "We think it is otherwise, however, where the policy expressly provides for a restriction or limitation of the wife's interest, or makes it depend upon a future contingency, such as an arrangement for a loan of money from the company to the husband and a repayment of the same out of the proceeds of the policy, when due. Whatever may be considered the true consideration underlying the insurance, the wife cannot be said to possess a greater interest in the policy than is given her by the terms thereof. When she acquires the title to the same, upon execution and delivery, she takes such title burdened with all its conditions and limitations. She can receive no more insurance, in other words, than the insured has contracted for in her behalf. If the insured has, therefore, stipulated for a loan to himself, to be paid out of the insurance money when it becomes due, by an acceptance of the policy she assents to the deduction of such loan from such proceeds, and she cannot afterwards be heard to deny the company's right to make such deduction."

The third paragraph of reply is based on an equitable estoppel, namely, the conduct of appellee in agreeing to be lenient with appellant and her husband, and granting

7. to them time after maturity of the debt in which to pay it. It is argued that this amounts to a waiver,

on the part of appellee, of its rights to proceed without demand for payment, and it could not, after it had waived its right, proceed to foreclose the pledge, without giving notice of its intention to withdraw the grace in payment; that this is true, even though the loan agreement waived demand and notice in the first instance. *Toplitz* v. *Bauer* (1900), 161 N. Y. 325, 55 N. E. 1059. The facts stated in the case last named are widely different from those here involved. That case does not lend support to the claim of appellant. There, the policy had been transferred to a third person for a loan which had been carried, with repeated extensions on it, from time to time, the last one extending beyond the time of the surrender of the policy, and it was finally surrendered by the holder to the company when the insured was practically upon his deathbed.

The pleading does not show that the promise to wait a reasonable time was violated. It does show that the company waited until December 31, 1906—nearly six months. It is not shown that appellant was injured thereby. *Dudley* v. *Pigg* (1898), 149 Ind. 363; *Taylor* v. *Patton* (1903), 160 Ind. 4. To the same effect see *First Nat. Bank, etc.,* v. *Leland* (1898), 122 Ala. 289, 25 South. 195, and *Porter* v. *Armstrong* (1904), 134 N. C. 447, 46 S. E. 997.

8. Apart from the rulings complained of, appellant could not recover, because the facts admitted by the pleadings showed that there was an indebtedness due to appellee, the payment of which was a condition precedent to the automatic extension of said insurance.

Judgment affirmed.

Roby, J., did not participate. Myers, C. J., absent.