# Wytheville

## STRATTON'S ADMINISTRATOR v. NEW YORK LIFE INSURANCE COMPANY.

### June 12, 1913.

### Absent, Keith, P.

1. LIFE INSURANCE—*Forfeiture—Failure to Pay Premiums—Application of Interest in Reserve Fund—Loans—Set Off.*—Upon a life insurance policy which had been in force seven years, the assured borrowed of the company $100. The policy subsequently lapsed for non-payment of a premium. At the date of the lapse there was a balance of $42.22 to the credit of the assured in the hands of the company from the reserve fund due him after deducting the loan of $100.00 and all other indebtedness to the company. The policy provided that the assured might, upon demand, have a policy written for the amount of paid up insurance specified in the policy less the amount of any indebtedness on the policy, or that the policy would, after the repayment of any indebtedness, be extended without request or demand, for the face amount thereof during the term provided in the policy, payable only if the insured died within said term. The $42.22 was sufficient to purchase paid up insurance to the amount of $105.00, or to extend the policy at its face value of $2000.00 for a period of one year and three months. The assured made no demand for a paid up policy and died within a year from the lapse of the premium. The company continued to request the payment of the premium up to the death of the assured and after his death denied liability for any greater sum than one hundred and five dollars, insisting that the lapsed premium and the loan should have been paid out of other funds than the assured's interest in the reserve.

   *Held:* The assured not having demanded a paid up policy, the policy was automatically kept in force for a year and three months, and, the assured having died within that period, his personal representative is entitled to recover the full face value of the policy. The assured had the right to set-off the amount due him by the company against what he owed the company, in the absence of any agreement to the contrary, as might have been

done in any other case between a debtor and creditor. Insurance companies who lend money to their policyholders stand in no different position from other lenders.

2. LIFE INSURANCE—*Loan Agreement—Forfeiture—Waiver.*—The "loan agreement" in the case at bar, under which the assured borrowed $100.00 of the insurance company, did not waive, either expressly or impliedly, any of the "non-forfeiture" privileges of the assured under his policy.

3. LIFE INSURANCE—*Policy—Forfeiture.*—The policy in suit was not automatically forfeited. In order to effect a forfeiture of it some affirmative action on the part of the insurer was necessary during the currency of the policy, but none was taken.

4. LIFE INSURANCE—*Policy Strictly Construed.*—The maxim that the words of an instrument shall be taken most strongly against the party employing them, is peculiarly appropriate in the construction of a policy of insurance. The instrument is wholly the work of the underwriter and is usually filled with a multitude and variety of stipulations seldom read by the assured when he accepts the policy, and, if read, rarely, if ever, understood, abounding in forfeitures and in provisions generally harsh and difficult of performance, and hence it should be strictly construed against the insurer and liberally in favor of the insured.

Error to a judgment of the Corporation Court of the city of Lynchburg in a proceeding by motion for a judgment on a life insurance policy. Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Thos. J. Williams* and *Wilson & Manson,* for the plaintiff in error.

*F. S. Kirkpatrick,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This is an action upon notice under the statute brought by the administrator of Alexander B. Stratton, Jr., deceased, against the New York Life Insurance Company to

recover of the latter the amount of an insurance policy alleged to have been held by the plaintiff's intestate and in force at the time of his death.

It appears that the defendant company issued to plaintiff's intestate on April 26, 1898, a policy of insurance for the sum of $2,000, which policy contained what is called "a policy loan agreement"; that on October 30, 1905, the insured obtained from the company a loan of $100 upon his policy as collateral, executing therefor also a "policy loan agreement," which loan had not been repaid in cash at the date of the insured's death, caused by drowning, on the 13th of November, 1907; that when the premium on the policy for the year beginning April 26, 1907, became due, the insured made a contract with the insurance company in regard thereto, which is evidenced by a writing signed by the insured, called a "Blue Note" (on account of the color of the paper on which written), which note was for the sum of $28.00, with interest, payable on or before August 26, 1907, and set forth that the note was accepted by the insurance company, together with $10.20 in cash, on the following express agreement: "That although no part of the premium due on the 26th day of April, 1907, under Policy No. 862036, issued by said company on the life of A. B. Stratton, Jr., has been paid, the insurance thereunder shall be continued in force until midnight of the due date of said note; that if this note is paid on or before the date it becomes due, such payment, together with said cash, will then be accepted by said company as payment of said premium and all rights under said policy shall thereupon be the same as if said premium had been paid when due; that if this note is not paid on or before the date it becomes due, it shall thereupon automatically cease to be a claim against the maker, and said company shall retain said cash as part compensation for the rights and privileges hereby granted, and all rights under

said policy shall be the same as if said cash had not been paid nor this agreement made; that said company has duly given every notice required by its rules or the laws of any State in respect to said premium, and in further compensation for the rights and privileges hereby granted the maker hereof has agreed to waive, and does hereby waive, every other notice in respect to said premium or this note, it being well understood by said maker that said company would not have accepted this agreement if any notice of any kind were required as a condition to the full enforcement of all its terms."

When said note matured on August 26, 1907, the insured, Stratton, executed another "Blue Note" for $18.00, payable on or before October 26, 1907, reciting that the note was accepted by the company at the request of the maker, together with $20.20 in cash, on a certain express agreement, which is practically the same as contained in the "Blue Note" quoted from above. When the last mentioned note became due, on October 26, 1907, it was not paid, and a new note was sent to the insured for execution by him, but it was never executed or returned to the company, and upon the lapse of the policy by reason of the insured's failure to settle this note, the company wrote, on the 29th of October, 1907, to the insured, requesting him to revive his policy, and to that end enclosed a note for $12.00, with the request that he execute and return the same, along with $6.15 in cash, to be received by the company in settlement of the premium on his policy for the year beginning April 26, 1907, which note was not executed by the insured, nor was the $6.15 in cash paid.

This, it appears, was the situation existing between the insured and the insurer up to November 13, 1907, on which date the insured died, and proofs of his death were duly furnished the company, as required by the terms of the policy. It is admitted, however, by the company that at

the date of the lapse of the policy, on October 26, 1907, after deducting the loan of $100 upon it, as aforesaid, and any other indebtedness upon the policy from the reserve due the insured thereon, there was a balance of $42.22 to the credit of the insured then in the hands of the company, which, according to its application, would either have purchased for the insured $105 of paid-up insurance, or would have served to secure for the insured an extension of the policy, at its face value of $2,000, for a period of one year and three months from April 25, 1907. Whether or not it was competent, under the circumstances, for the company to apply the said balance to the purchase of paid-up insurance, or said balance should have been applied in the purchase of extended insurance, are questions unsettled by the agreed statements of facts appearing in the record.

The insurance company, before any action was commenced on said policy, tendered to the insured's personal representative $105 in settlement of its liability under the policy, which was not accepted, and thereupon this action was brought.

When the cause was called for trial, a jury was waived by both parties and all questions of law and fact were submitted to the court for decision upon the issue joined; whereupon the court, upon two statements of facts, agreed to by the parties, entered its judgment for the plaintiff in the sum of $105, instead of the sum of $2,000, the face value of the policy claimed by the plaintiff, to which judgment the plaintiff applied for and obtained this writ of error.

The principal question presented is to which of the two ways should the balance of $42.22, admittedly to the credit of the insured at the date of the lapse of his policy on October 26, 1907, after deducting the $100 loan upon the policy, have been applied—to the purchase of paid-up insurance, or to the purchase for the insured of an extension

of his policy at its full face value of $2,000 for a period of one year and three months from the 25th of April, 1907? A decision of this question necessarily must turn upon the construction and interpretation of the contract between the insurer and the insured as evidenced by the policy and the "loan agreement."

The provisions of the policy which relate to the question are set out under the heading of "Benefits and Provsions," and are as follows:

### "2.—Non-Forfeiture.

"This Policy Cannot Be Forfeited After It Shall Have Been in Force Three Full Years as Hereinafter Provided.

"First—If any subsequent premium is not duly paid, this Policy will be endorsed for the amount of paid-up insurance, payable at the death of the insured, specified in the table on the preceding page, less the value of any indebtedness on this Policy, provided demand is made therefor, with surrender of this Policy, within six months after such non-payment; or,

"Second—If any subsequent premium is not duly paid, and if this Policy is not surrendered as provided in the preceding clause, the insurance under this Policy will, after the repayment of any indebtedness, be extended without request or demand therefor, for the amount of Two Thousand Dollars, during the term provided in the table on the preceding page, payable only if the insured dies within said term. At the end of said term, if the insured is then living, this Policy shall cease and determine.

"Third—The insurance provided for in the two preceding clauses shall be based upon completed insurance years only, and shall be subject to the conditions of this Policy, but without further payment of premiums and without loans or participation in surplus."

We need not advert to the "table" referred to in the foregoing provisions, set out in full on the second page of the policy, under the heading of Special Advantages. Table of Loans and of Surrender Values in Paid-up Insurance, or Extended Insurance, &c., further than to say that the terms provided therein do not militate against the view for which plaintiff in error contends, that under the provisions of the policy, upon default in the payment of any premium, the insurance was automatically extended, without any action whatever on the part of the insured, provided there was to his credit on the reserve fund an amount sufficient to pay the company any indebtedness due it from the insured, and to purchase for him extended insurance for at least one year from the due date of the premium on the policy as to the payment of which default was made, to-wit, on April 26, 1907, unless the insured made demand for paid-up insurance, which demand was not in this case made.

Under the "Non-Forfeiture" provisions of the policy, when it lapsed on October 26, 1907, for non-payment of the premium for the year beginning April 26, 1907, and no demand had been made for paid-up insurance, as is conceded, did the policy become forfeited, and, if not, was not the insured entitled to the benefit of extended insurance in accordance with the terms of the second clause thereof?

That the policy was not forfeited, but was extended as in full force for a period of one year and three months from April 26, 1907, during which period insured died and the insurer became liable to the personal representative of the deceased for the amount of the face value of the policy is also conceded, unless the right to this extended insurance was lost to the insured by the non-payment in cash of the $100 loan he had obtained from the insurer, notwithstanding he had to his credit with the insurer a fund sufficient to repay the said loan and to purchase an extended insurance under his policy for a period extending beyond his death.

As it seems to us, there was no indebtedness due from the insured to the insurer when the policy lapsed on October 26, 1907, but on the contrary the company was, after deducting the indebtedness of the insured to it, due the insured a balance of $42.22, an amount sufficient to purchase an extended insurance for a period beyond his death, and he had not applied for paid-up insurance for the amount of this balance; and that by the very terms of the contract between the parties the insured had the right to rely, as doubtless he did, upon the provision contained in clause second of his policy, that he should be entitled to have the balance to his credit with the insurer applied to the purchase of extended insurance, unless he demanded paid-up insurance and surrendered his policy.

The position taken by the insurance company (defendant in error here) is that plaintiff in error's intestate owed it $100 of borrowed money, and while it owed the insured $142.22, instead of striking a balance and giving to the insured $42.22 worth of extended insurance, it had the right to and did demand that the $100 loan be first repaid to it, not out of the $142.22 to the credit of the insured, but from other sources, before it was called upon to give to the insured $42.22 worth of extended insurance. In other words, defendant in error denies that the insured had the right to set off against his loan of $100 the $142.22 to his credit with defendant in error, and contends that because the $100 loan had not been paid from other sources, no part of the $142.22 to the credit of the insured, though applicable to the repayment of the loan, should have been applied to the purchase of extended insurance under the policy.

This contention is not borne out by the language of the contract between the parties. Under the heading "General Regulations" in the contract is this clause: "Any indebtedness to the company, including any balance of the

current year's premium remaining unpaid, will be deducted in any settlement of this policy or of any benefit thereunder." The defendant in error might have had the right to declare the policy in question forfeited by the non-payment of the premium thereon for the year beginning April 26, 1907, but this it did not do, but instead treated the policy as in force and sought to have the unpaid premium paid until after the death of the insured, and for weeks after it occurred, certainly up to the time it heard of the insured's death. It is not pretended that the policy was forfeited by reason of the non-payment of a premium matured theron, but because of the non-payment of borrowed money under the "Loan Agreement," which is in effect to claim that the phrase "after the repayment of any indebtedness" contained in the policy, absolutely forfeited the right to extended insurance immediately upon the insured's contracting a debt with his insurer, and this too regardless of how small the debt or how large a sum there might be to the credit of the insured, by way of reserve upon his policy, in excess of the contracted debt. Had there been no debt for a loan contracted pursuant to the provisions of the policy in this instance, it would hardly be claimed that defendant in error would have had the right to declare the policy forfeited, as it did on December 24, 1907, over a month after the death of the insured, when it had in its hands on October 26, 1907, money enough to purchase for the insured extended insurance for a period extending beyond his death; so that the forfeiture of the policy, as remarked, is not based upon the failure to pay a premium due thereon, but upon the non-payment from other sources than the reserve fund to the credit of the insured of a debt for money borrowed.

Forfeitures are not favored in law, and when they are mere penalties for the non-payment of borrowed money they are not allowed.

In *N. Y. Life Ins. Co.* v. *Curry,* 115 Ky. 100, 72 S. W. 763, 61 L. R. A. 268, 103 Am. St. Rep. 297, it is said: "The courts have uniformly held in favor of the insurer that agreements for the forfeiture of the policy when premiums were not paid when due are valid, and their enforcement is upheld. This is said to be because 'on the prompt payment of the premiums depends the mutuality of the contract and the ability of the insurance company to meet its obligations.' But both the reason and the rule are restricted to the matter of premium alone. Forfeitures are disfavored in law. When they are mere penalties for the non-payment of borrowed money, they are not allowed. They lead to, and themselves are, unconscionable oppressions of the unfortunate."

As said by this court in *Knights of Columbus* v. *Burroughs,* 107 Va. 688, 60 S. E. 46, 17 L. R. A. (N. S.) 246, "courts are astute to discover modes of escape from declaring a forfeiture."

The case of *N. Y. L. Ins. Co.* v. *Curry, supra,* is also authority for the proposition that when an insurance company loans money to one of its policy holders, it is in no different position from any other lender of money; and in lending its money it is subject to the same general rules and principles governing banks, trust companies and other such corporations engaged in lending money. This general rule is, that a borrower, say from a bank, when his loan falls due, has the right to offset against the loan any amount to his credit with the bank—a privilege which works equally in favor of the bank—and it is difficult to perceive a reason why an insurance company lending money to its policy holders should not be subject to the same rule, especially so in the absence of a different rule stipulated for and clearly expressed in the contract between the parties. The "table" made a part of the policy here in question was not, as appears to us, put there to restrict the

rights of the insured, but to give expression to the argument that at the end of three years from the date of the policy there was a certain reserve value to the credit of the holder of the policy, which reserve increased each year that the policy continued in force, and that upon the lapse of the policy for the non-payment of a premium maturing thereon, the insured, under the heading, "Special Advantages," showing what this reserve value would purchase at the end of any year, had the right, by refraining from demanding paid-up insurance therefor and surrendering his policy, to rely upon the provision made for him in his contract that this reserve fund, after deducting therefrom "any indebtedness to the company, including any balance of the current year's premium remaining unpaid," would be applied to the purchase for him of extended insurance.

"The 'table' could not prescribe the amount of continued or paid-up insurance in case of indebtedness of any kind, because the extent of the continued or paid-up insurance would be dependent upon the amount of the indebtedness to be first deducted before the continued or paid-up insurance was computed. The 'table' is inserted in the policy to show the rights of or benefits to the insured in continued or paid-up insurance in case of default at specified times in paying the premium to become due on the policy. . . ."

"The time that the insurance would be extended, or the amount of the paid-up insurance was definitely fixed and determined in the policy in all cases where it was possible to so fix and determine the time or the amount in advance. In all cases of indebtedness the continued or paid-up insurance was dependent upon the amount of indebtedness. The fact of an indebtedness to the defendant did not forfeit the right to continued or paid-up insurance, but simply left the time of the extension or the amount of the paid-up insurance dependent upon a computation to be made when

the amount of the indebtedness was determined." *Taylor* v. *N. Y. Life Ins. Co.*, 197 N. Y. 324, 90 N. E. 964.

We are unable to appreciate the force of the argument on behalf of the defendant in error, that the "Loan Agreement" changed the contractual relations between the insured and the insurer. This agreement does not provide that if default should be made in the payment of any premium on the policy, or any interest on the loan, on the date when due, the defendant in error, without demand or notice of any kind, might deduct the amount due on the loan from the reserve on the policy computed as stipulated for in the agreement, and the balance of the reserve fund so computed would be taken as a single premium of life insurance at the published rates of the company, and shall be applied to the purchase of paid-up or extended insurance upon the life of the insured under said policy, at the age of said insured on said due date, payable under the same conditions as the original policy, without premium return, participation in profits, or further payment of premiums; but the purpose of this "Loan Agreement" was doubtless intended as providing a method of collecting and securing to defendant in error, the insurer, the loan of $100, which method was by foreclosure of the policy, and upon foreclosure the only privilege remaining in the insured was the right to paid-up insurance for an amount to be computed by the insurer after the indebtedness had been deducted from the reserve value of the policy. We cannot construe this "Loan Agreement" as a waiver on the part of the insured, either expressly or impliedly, of any of his "Non-Forfeiture" privileges under the policy; but these privileges, as it seems to us, remained intact to the insured, subject, however, to the right of the insurer to cancel and foreclose the policy whenever it chose so to do after default in the payment of any premium past due and owing on the policy, or in the payment of interest due on the loan made thereon; but again it is to be observed that defendant in error

did not avail itself of this right and did not attempt a foreclosure of the policy until after it had incurred a loss thereon by reason of the death of the insured weeks before any action towards a foreclosure of the policy was taken, and after it had treated the policy as in full force and had endeavored to collect the "Blue Note" taken for unpaid premiums or to get from the insured renewals of this note. The foreclosure of the policy was neither automatically effected on October 26, 1907, upon the failure of the insured to pay the "Blue Note" due on that date, nor was it effected on that date, or after, and before the death of the insured by any affirmative action on the part of the defendant in error.   To effect a foreclosure of the policy some affirmative act was required on the part of the defendant in error.   *Brady* v. *Prudential Ins. Co. of Amer.* 9 Misc. Rep. 6, 29 N. Y. Supp. 44; 3 Cooley's Briefs on Ins., 2261, 2278; *O'Brien* v. *Prudential Ins. Co. of Amer.,* 12 Mis. Rep. 127, 33 N. Y. Supp. 67.

As we have seen, the defendant in error took no action towards effecting a foreclosure of the policy here in question until weeks after the death of the insured.   On the contrary, instead of availing itself of its right to foreclose immediately on default in the payment of the "Blue Note" falling due on October 26, 1907, defendant in error delayed the foreclosure of the policy until December 24, 1907, and in the mean time conducted a correspondence ·addressed to the insured, endeavoring to have him reinstate his policy, all of its letters admitting that the "Non-Forfeiture" benefits of the policy were in force pending foreclosure by the company, and one of these letters, dated October 29, 1907, inclosed to the insured to be signed by him a "Blue Note" for the amount of the balance of unpaid premiums, upon the face of which note appears the following: "This note is deposited with the New York Life Insurance Company pending the consideration by said Company at its Home Office of an application for the res-

toration of Policy No. 862036 on the life of Alexander B.
Stratton, Jr., which policy, by the non-payment of premium
due April 26, 1907, is not now in force *except as may be
provided by the non-forfeiture benefits contained therein."*
(Italics ours.)

We again advert to the provision of the policy that pro-
vides that in order to entitle the insured to paid-up in-
surance he must have made demand therefor, and there is
no pretense that such demand was ever made; and further,
that the "non-forfeiture" provisions of the policy stipu-
lated that in these circumstances the only benefit remain-
ing to the insured was the right to extended insurance.

The case of *Eagle* v. *N. Y. Life Ins. Co.,* 48 Ind. App. 284,
91 N. E. 814, relied on as authority in this case, does not
sustain the position taken by defendant in error. In that
case the insurance company foreclosed the loan made on
the policy, and the question decided was, whether the pro-
vision in the loan agreement providing for foreclosure
without legal notice was illegal; and the court merely held
that such provision was legal and that the foreclosure in
that case had been properly made. No such question is
involved in the case at bar.

It is said in the opinion of this court by Burks, J., in
*Georgia Home Ins. Co.* v. *Kinnier's Admr.,* 28 Gratt. (69
Va.) 105, and afterwards cited in later cases: "The maxim,
that 'the words of an instrument shall be taken most
strongly against the party employing them,' is peculiarly
appropriate in the construction of a policy of insurance,
and especially of such conditions as we are now consid-
ing. The instrument is wholly the work of the under-
writer, and is usually filled with a multitude and variety
of stipulations seldom read by the assured when he accepts
the policy, and, if read, rarely if ever understood, abound-
ing in forfeitures and in provisions generally harsh and
difficult of performance, it should be strictly construed
against the insurer, and liberally in favor of the insured.

A modern writer on insurance thus states the rule: 'No rule, in the interpretation of a policy, is more fully established, or more controlling and imperative, than that which declares that, in all cases it must be liberally construed in favor of the insured, so as not to defeat without a plain necessity his claim to indemnity, which, in making the insurance, it was his object to secure.'    May on Insurance, 182."

In the light of this universally recognized rule of construction, and in view of the agreed facts made a part of the record in this case, until the policy in question was foreclosed the ownership of it and the assured's rights under it were not affected, one of these rights being that of having the indebtedness to the insurer paid out of the amount to his credit from the reserve fund stipulated for in the policy, and the balance of this reserve applied to the purchase of extended insurance, and that too without any request or demand on his part.    There being enough money to the credit of the insured with the company to pay it the loan he had obtained on his policy and to continue the policy as extended insurance for one year and three months from the time of default in the payment of the premium which matured April 26, 1907, during which period, and before the defendant in error attempted to exercise its right to foreclose the policy, the insured died, the agreement of defendanet in error to pay $2,000 to the deceased's personal representative became absolute and final.

For the foregoing reasons we are of opinion that the judgment of the trial court is erroneous, and it will, therefore, be reversed and annulled, and this court will enter here judgment for $2,000 in favor of plaintiff in error against defendant in error for the face value of the policy sued on, with interest thereon from the 13th day of November, 1908, till paid, and costs.

*Reversed.*